Jeremy J. Hugus, #7-4630
PLATTE RIVER LAW FIRM
536 South Center Street
Casper, Wyoming 82601
P: (307) 215-9724
F: (307) 237-1570
E: Hugus@PlatteRiverLaw.com

*Attorney for Plaintiff*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 JAN -4 AM 8: 10

STEPHAN HARRIS, CLERK
CASPER

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| SUSIE A. BELVING )<br><br>)<br>)<br>Plaintiff, )<br>v. )<br>)<br>CENTRAL WYOMING RESCUE )<br>MISSION/THE TRANSFORMATION )<br>CENTER (CWRM), BRAD HOPKINS, )<br>individually and as an employee and )<br>agent of CWRM, and JACKIE )<br>PICKINPAUGH, individually and as an )<br>employee and agent of CWRM )<br>)<br>Defendants. ) | Civil Action No. 17-CV-01-F |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff and for her complaint again Defendants hereby avers and states as follows:

## I.    INTRODUCTION

1.    This is an employment discrimination action brought pursuant to 42 U.S.C. §§ 12101 through 12117, inclusive; WYO. STAT. §§ 27-9-101 through 105, inclusive; 42 U.S.C. §§ 2000e through 2000e-2, inclusive; and Wyoming case law.

Receipt # CAS 001 823
Summons:_____issued
            ✓  not issued

## II.   PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff is and was at all times relevant hereto a citizen of the State of Wyoming and a resident of Casper, Wyoming.

3.      Defendant Central Wyoming Rescue Mission (hereinafter, "CWRM") is and was at all times relevant hereto a Wyoming non-profit corporation, incorporated in Wyoming, with its principal place of business in Natrona County, Casper, Wyoming.

4.      Defendant Brad Hopkins, (hereinafter, "Hopkins") is and was at all times relevant hereto a citizen of the State of Wyoming and a resident of Casper, Wyoming.

5.      Defendant Jackie Pickinpaugh, (hereinafter, "Pickinpaugh") is and was at all times relevant hereto a citizen of the State of Wyoming a resident of Casper, Wyoming.

6.      At all times relevant hereto, Plaintiff was an employee of Defendant CWRM.

7.      At all times relevant hereto, Defendant Hopkins was the Executive Director of and an employee of Defendant CWRM.

8.      At all times relevant hereto, Defendant Pickinpaugh was a supervisor for and an employee of Defendant CWRM.

9.      The averments contained herein raise questions of federal law; jurisdiction is proper pursuant to 42 U.S.C. § 1331.

10.     This Court also has pendant jurisdiction over questions of Wyoming State law pursuant to 42 U.S.C. § 1367.

11.     The unlawful acts, statutory violations, negligence, and breaches of duty which give rise to this action were committed in Natrona County within the District of Wyoming; venue is proper in this Court pursuant to 42 U.S.C. § 1391.

### III.   PROCEDURAL REQUIREMENTS

12.    Plaintiff has satisfied all procedural requirements and exhausted her administrative remedies prior to commencing this action. She has received her "Right-to-Sue" letter from the EEOC and is filing this complaint within 90 days of receiving the same.

### IV.   FACTS COMMON TO ALL CAUSES OF ACTION

13.    Plaintiff repeats and fully incorporates by this reference all above paragraphs.

14.    On or about June 3, 2011 Defendant CWRM hired Plaintiff as its front desk supervisor at an hourly rate of $8.00.

15.    Plaintiff was an employee of Defendant CWRM, and Defendant CWRM was Plaintiff's employer for the entire period of time between June 3, 2011 and June 20, 2013.

16.    On or around June 18, 2013 Defendants Defendant CWRM required Plaintiff to submit to a random urine sample drug test.

17.    Plaintiff was unable to provide a urine sample for this June 18, 2013 drug test.

18.    Even after waiting at least 45 minutes and drinking two bottles of water while she waited Plaintiff was unable to provide Defendants a urine sample.

19.    On or about June 21, 2013, Defendant CWRM fired Plaintiff because she was unable to provide a urine sample for the June 18, 2013 drug test.

20.    Plaintiff had missed at least one week of work immediately prior to this drug test due to an in-patient hospital stay stemming from complications secondary to her diabetes disability.

21.    Before Defendant CWRM fired Plaintiff, she explained to Defendants that she was unable to urinate due to pancreatitis and a blockage or mass secondary to her diabetes disability.

22.    Before Defendant CWRM fired Plaintiff, she explained to Defendants that she was experiencing severe pain secondary to her diabetes disability.

23.     Before Defendant CWRM fired Plaintiff, her health care providers notified Defendants that Plaintiff was suffering from pancreatitis and a blockage or mass secondary to her diabetes.

24.     Before Defendant CWRM fired Plaintiff, Defendants were aware that Plaintiff had recently missed at least one week of work due to her illness and that she was still in considerable pain on June 18, 2013.

25.     Before Defendant CWRM fired Plaintiff, she communicated to Defendants that she was willing to take a more invasive blood sample drug test because she was unable to provide a urine sample.

26.     Defendant Pickinpaugh initially agreed to allow Plaintiff to submit to the drug test by providing a blood sample instead of a urine sample.

27.     Before Plaintiff had opportunity to provide a blood sample and before Defendant CWRM fired her, Defendant Pickinpaugh told Plaintiff to go home and that she was no longer required to submit to the drug test.

28.     At the time she was fired, Plaintiff was able to and was satisfactorily performing her job.

29.     Plaintiff received favorable letters of recommendation from two of her supervisors, including Defendant Pickinpaugh on December 6, 2012, just six months prior to being fired.

30.     On May 19, 2013, just one month before she was fired, Plaintiff received a raise increasing her hourly wage from $8.24 to $9.00.

31.     Plaintiff was still making $9.00 when her employment was terminated on or about June 21, 2013.

32.     At the time Defendant CWRM fired Plaintiff, it was providing her with life, dental, and vision insurance benefits and was paying, at least in part, the insurance premiums for these employee benefits.

33.     Defendant CWRM still provides these employee benefits to its current employees.

34.     At the time Plaintiff's employment was terminated, Defendant CWRM was providing her with a Health Reimbursement Account ("HRA") benefit in the amount of at least $5,000 annually.

35.     Defendant CWRM continued to provide this employee benefit at least through the end of 2014.

## V.    FIRST CAUSE OF ACTION
### (Disability Discrimination – Defendant CWRM – 42 U.S.C. §§ 12101 through 12117)

36.     Plaintiff repeats and fully incorporates by this reference all above paragraphs.

37.     At all time relevant hereto Plaintiff suffered and still suffers from a diabetes.

38.     Diabetes is a disability under the American with Disabilities Act ("ADA") which substantially limits one or more major life activities.

39.     Plaintiff's diabetes substantially limits one or more of her major life activities.

40.     At all time relevant hereto Plaintiff was and still is a qualified disabled member of a protected group under the ADA (42 U.S.C. §§ 12101 through 12117).

41.     Plaintiff was performing her job in a satisfactory matter when Defendant CWRM fired her on or about June 21, 2013.

42.     When Defendant CWRM fired Plaintiff it was aware of Plaintiff's diabetes disability.

43.     When Defendant CWRM fired Plaintiff it was aware that Plaintiff's disability prevented her from providing a urine sample for drug testing.

5

44.     When Defendant CWRM fired Plaintiff it was aware of an effective, reasonable alternative that would accommodate Plaintiff's disability—a blood sample drug test.

45.     When Defendant CWRM fired Plaintiff it was aware of an effective, reasonable alternative that would not impose on Defendant CWRM an unreasonable hardship.

46.     Prior to Defendant CWRM firing her, Plaintiff was willing on June 18, 2013 to submit to this effective, reasonable alternative blood sample drug test.

47.     Prior to firing Plaintiff, Defendant CWRM was aware that Plaintiff was willing on June 18, 2013 to submit to this effective, reasonable alternative blood sample drug test.

48.     Defendant CWRM refused Plaintiff the opportunity to provide a blood sample drug test and in so doing denied her this reasonable accommodation.

49.     Defendant CWRM fired Plaintiff for her failure to provide the urine-based drug sample which she was unable to provide as a result of her diabetes disability.

50.     In firing Plaintiff for her physical inability to provide a urine sample for its drug test and in refusing her the reasonable accommodation of providing a blood sample for its drug test, Defendant CWRM unlawfully discriminated against Plaintiff in violation of 42 U.S.C. §§ 12101 through 12117, inclusive, and acted with disregard for Plaintiff's legal rights and protections thereunder.

51.     As a direct and proximate result of Defendant CWRM's unlawful discriminatory acts and omissions, Plaintiff has sustained injuries and damages, to be proven at trial, which she is entitled to recover.

## VI.     SECOND CAUSE OF ACTION
### (Disability Discrimination – Defendant CWRM and Defendant Hopkins
### WYO. STAT. §§ 27-9-101 through 105)

52.     Plaintiff repeats and fully incorporates by this reference all above paragraphs.

53.     At all time relevant hereto Plaintiff suffered and still suffers from a diabetes disability that substantially limits one or more of her major life activities.

54.     At all time relevant hereto Plaintiff was and still is a qualified disabled person under WYO. STAT. §§ 27-9-105.

55.     At all time relevant hereto Defendant CWRM and Defendant Hopkins were Plaintiff's employer under WYO. STAT. §§ 27-9-105.

56.     Plaintiff was performing her job in a satisfactory matter when Defendant CWRM and Defendant Hopkins fired her on or about June 21, 2013.

57.     When Defendant CWRM and Defendant Hopkins fired Plaintiff they were aware of Plaintiff's diabetes disability.

58.     When Defendant CWRM and Defendant Hopkins fired Plaintiff there were aware that Plaintiff's disability prevented her from providing a urine sample for drug testing.

59.     When Defendant CWRM and Defendant Hopkins fired Plaintiff they were aware of an effective, reasonable alternative that would accommodate Plaintiff's disability—a blood sample drug test.

60.     When Defendant CWRM and Defendant Hopkins fired Plaintiff they were aware of an effective, reasonable alternative that would not impose on either of them an unreasonable hardship.

61.     Prior to Defendant CWRM and Defendant Hopkins firing her, Plaintiff was willing on June 18, 2013 to submit to this effective, reasonable alternative blood sample drug test.

62.     Prior to firing Plaintiff, Defendant CWRM and Defendant Hopkins were aware that Plaintiff was willing on June 18, 2013 to submit to this effective, reasonable alternative blood sample drug test.

63.     Defendant CWRM and Defendant Hopkins refused Plaintiff the opportunity to provide a blood sample drug test and in so doing denied her this reasonable accommodation.

64.     Defendant CWRM and Defendant Hopkins fired Plaintiff for her failure to provide the urine-based drug sample which she was unable to provide as a result of her diabetes disability.

65.     In firing Plaintiff for her physical inability to provide a urine sample for its drug test and in refusing her the reasonable accommodation of providing a blood sample for its drug test, Defendant CWRM and Defendant Hopkins unlawfully discriminated against Plaintiff and engaged in unfair employment practices in violation of WYO. STAT. §§ 27-9-101 through 105, inclusive, and acted with disregard for Plaintiff's legal rights and protections thereunder.

66.     As a direct and proximate result of Defendant CWRM's and Defendant Hopkins' unlawful discriminatory and unfair acts and omissions, Plaintiff has sustained injuries and damages, to be proven at trial, which she is entitled to recover.

## VII.   THIRD CAUSE OF ACTION
### (Racial Discrimination – Defendant CWRM – 42 U.S.C. §§ 2000e through 2000e-2)

67.     Plaintiff repeats and fully incorporates by this reference all above paragraphs.

68.     Plaintiff is a black, African American woman.

69.     Plaintiff is a member of a protected class under 42 U.S.C. §§ 2000e through 2000e-2.

70.     Plaintiff was performing her job in a satisfactory matter when Defendant CWRM fired her on or about June 21, 2013.

71.     When Defendant CWRM fired Plaintiff it was aware of Plaintiff's race and that she was a member of a protected class under 42 U.S.C. §§ 2000e through 2000e-2.

72.     When Defendant CWRM fired, Plaintiff suffered from a disability that prevented her from providing a urine sample for drug testing.

73.    When Defendant CWRM fired Plaintiff it was aware of an effective, reasonable alternative that would accommodate Plaintiff's disability without imposing on Defendant CWRM an unreasonable hardship and to which Plaintiff was willing on June 18, 2013 to submit.

74.    Despite the fact that Plaintiff was performing her job in a satisfactory manner, Defendant CWRM refused to provide Plaintiff with a reasonable accommodation for its random drug test in part because she is a black, African American.

75.    Defendant CWRM subsequently fired Plaintiff for her inability to provide a urine-based drug sample in part because she is a black African American.

76.    After firing Plaintiff, Defendant CWRM filled her position with a white, Caucasian woman.

77.    In refusing to provide a reasonable accommodation for Plaintiff's disability because she is a black, African American, Defendant CWRM unlawfully discriminated against Plaintiff in violation of 42 U.S.C. §§ 2000e through 2000e-2, inclusive, and acted with disregard for Plaintiff's civil rights and protections thereunder.

78.    As a direct and proximate result of Defendant CWRM's unlawful discriminatory acts and omissions, Plaintiff has sustained injuries and damages, to be proven at trial, which she is entitled to recover.

## VIII.    FOURTH CAUSE OF ACTION
### (Racial Discrimination – Defendant CWRM and Defendant Hopkins
### WYO. STAT. §§ 27-9-101 through 105)

79.    Plaintiff repeats and fully incorporates by this reference all above paragraphs.

80.    Plaintiff is a black, African American woman.

81.    Plaintiff is a member of a protected class under WYO. STAT. §§ 27-9-101 through 105.

82.    At all time relevant hereto Defendant CWRM and Defendant Hopkins were Plaintiff's employer under WYO. STAT. §§ 27-9-105.

83.    Plaintiff was performing her job in a satisfactory matter when Defendant CWRM and Defendant Hopkins fired her on or about June 21, 2013.

84.    When Defendant CWRM and Defendant Hopkins fired Plaintiff they were aware of Plaintiff's race and that she was a member of a protected class under 42 U.S.C. §§ 2000e through 2000e-2.

85.    When Defendant CWRM and Defendant Hopkins fired, Plaintiff suffered from a disability that prevented her from providing a urine sample for drug testing.

86.    When Defendant CWRM and Defendant Hopkins fired Plaintiff they were aware of an effective, reasonable alternative that would accommodate Plaintiff's disability without imposing on either of them an unreasonable hardship and to which Plaintiff was willing on June 18, 2013 to submit.

87.    Despite the fact that Plaintiff was performing her job in a satisfactory manner, Defendant CWRM and Defendant Hopkins refused to provide Plaintiff with a reasonable accommodation for their random drug test in part because she is a black, African American.

88.    Defendant CWRM and Defendant Hopkins subsequently fired Plaintiff for her inability to provide a urine-based drug sample in part because she is a black African American.

89.    After firing Plaintiff, Defendant CWRM and Defendant Hopkins filled her position with a white, Caucasian woman.

90.    In refusing to provide a reasonable accommodation for Plaintiff's disability because she is a black, African American, Defendant CWRM and Defendant Hopkins unlawfully discriminated against Plaintiff in violation of WYO. STAT. §§ 27-9-105, and acted with disregard for Plaintiff's civil rights and protections thereunder.

91.     As a direct and proximate result of Defendant CWRM's and Defendant Hopkins' unlawful discriminatory acts and omissions, Plaintiff has sustained injuries and damages, to be proven at trial, which she is entitled to recover.

## IX.     FIFTH CAUSE OF ACTION
### (Intentional Infliction of emotional distress – All Defendants)

92.     Plaintiff repeats and fully incorporates by this reference all above paragraphs.

93.     Defendant CWRM's employee manual or handbook contains its drug-testing policy.

94.     This written policy provides that Defendants were permitted to drug test specific employees when they suspected that an individual was under the influence of illegal drugs or alcohol while working or while on Defendant CWRM's premise.

95.     This written policy does not allow provide for random suspicionless drug tests.

96.     In conducting the random drug test Defendants failed to follow their own written policies regarding drug-testing.

97.     In intentionally failing to follow their own employee handbook and in refusing to make reasonable accommodation for Plaintiff's disability, in discriminatory violation of state and federal statutes, Defendants' acted outrageously

98.     As a direct and proximate result of Defendants' outrageous unlawful conduct Plaintiff was subject to excruciating physical pain and discomfort and severe mental distress which she is entitled to recover.

## X.     SIXTH CAUSE OF ACTION
### (Negligent Infliction of emotional distress – All Defendants)

99.     Plaintiff repeats and fully incorporates by this reference all above paragraphs.

100.    Defendant CWRM's employee manual or handbook contains its drug-testing policy.

101.    This written policy provides that Defendants were permitted to drug test specific employees when they suspected that an individual was under the influence of illegal drugs or alcohol while working or while on Defendant CWRM's premise.

102.    This written policy does not allow provide for random suspicionless drug tests.

103.    In conducting the random drug test Defendants failed to follow their own written policies regarding drug-testing.

104.    In intentionally refusing follow their own employee handbook and in refusing to make reasonable accommodation for Plaintiff's disability, in discriminatory violation of state and federal statutes, Defendants' directly invaded Plaintiff's rights.

105.    In intentionally refusing follow their own employee handbook and in refusing to make reasonable accommodation for Plaintiff's disability, in discriminatory violation of state and federal statutes, Defendants' acted maliciously, willfully, and wantonly.

106.    As a direct and proximate result of Defendants' direct invasion of Plaintiff's rights and their malicious, willful, and wanton misconduct Plaintiff was subject to excruciating physical pain and discomfort and severe mental distress which she is entitled to recover.

## XI.    SEVENTH CAUSE OF ACTION
### (Breach of Implied Duty of Good Faith and Fair Dealing – All Defendants)

107.    Plaintiff repeats and fully incorporates by this reference all above paragraphs.

108.    Defendant CWRM's  employee manual or handbook contains its drug-testing policy.

109.    This written policy provides that Defendants were permitted to drug test specific employees when they suspected that an individual was under the influence of illegal drugs or alcohol while working or while on Defendant CWRM's premise.

110.    Defendants failed to follow their own written policies regarding drug-testing.

111.    These provisions created a reasonable expectation in Plaintiff's mind as to when drug testing would be conducted and in what manner.

112. Plaintiff also had a reasonable expectation that defendants would not discriminate against her on the basis of her race or disability.

113. These expectations create a special relationship and an implied duty of good faith and fair dealing.

114. In conducting a random drug test on all employees as set forth herein, in directed violation of Defendant CWRM's own policies and in failing to provide a reasonable accommodation for Plaintiff in light of their knowledge of her disability and race, all defendants breached an implied duty of good faith and fair dealing to Plaintiff arising from the special relationship and her reasonable expectation that they would not unlawfully violate their statutory duties and obligations to her.

115. As a direct and proximate result of Defendant's breach of the implied duty of good faith and fair dealing, Plaintiff has sustained injuries and damages, to be proven at trial, which she is entitled to recover.

## XII.  EIGHT CAUSE OF ACTION
### (Punitive Damages – All Defendants)

116. Plaintiff repeats and fully incorporates by this reference all above paragraphs.

117. Defendants knew of Plaintiff's status as member of a protected class both as a black African American and as a disabled women when they refused to provide

118. Defendants knew or had reason to know that their behavior created a high degree of risk of harm to Plaintiff both physically and mentally and acted with such recklessness as to be willful, wanton, malicious and oppressive and in total disregard for Plaintiff's well being and civil rights

119. As a direct and proximate result of Defendant's conduct Plaintiff has suffered extreme and several mental and physical damages.

120.    Punitive and exemplary damages should be assessed against all defendants to prevent such outrageous and intolerable conduct in the future to be determined by the Court and Jury.

## XII.    JURY DEMAND

Plaintiff hereby respectfully demands a jury trial of no less than six persons.

## XIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter judgment against Defendants and each of them jointly and severally in their individual and representative capacities and award her the following relief:

A.      Pecuniary and compensatory damages, including back pay, lost employee insurance and health benefits, and prejudgment interest, compounded annually;

B.      Front pay;

C.      Reimbursement for increased tax liability;

D.      Damages for lost earning capacity; loss of reputation; loss of enjoyment and quality of life; emotional pain, distress, and suffering;

E.      Punitive damages for defendants extreme, reckless, outrageous, and wrongful conduct;

F.      Litigation costs and expenses and attorney's fees following as provided for by federal statue;

F.      An award of such other equitable remedies or relief as the Court find just and proper.

DATED this ⟍⟍⟍ day of January, 2017.

Jeremy J. Hugus, #7-4630
PLATTE RIVER LAW FIRM
536 South Center Street
Casper, Wyoming 82601
P: (307) 215-9724
F: (307) 237-1570
E: Hugus@PlatteRiverLaw.com

*Attorney for Plaintiff*